

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Blanche M. Manning | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 04 C 5960 | **DATE** | November 30, 2004 |
| **CASE TITLE** | *In re: Hogan* | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons set forth in the attached memorandum and order, the bankruptcy court's judgment is affirmed. The clerk is directed to terminate this case from the court's docket and to send a copy of this order to Bankruptcy Pamela Hollis. Enter Memorandum and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | DEC 0 3 2004 date docketed | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | 10 |
| ✓ | Copy to judge/magistrate judge. | | | |
| RTS | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Lillie R. Hogan, | ) | 04 C 5960 |
|     Debtor, | ) | |
| ———————————————— | ) | Appeal from Bankruptcy |
| Lillie R. Hogan, | ) | Case No. 04 B 16385 |
|     Plaintiff, | ) | |
| | ) | |
|     v. | ) | |
| | ) | |
| Marilyn O. Marshall, as Chapter 13 | ) | |
| Standing Trustee. | ) | |

**DOCKETED DEC 0 3 2004**

## MEMORANDUM AND ORDER

Section 109(g)(2) of the bankruptcy code provides that a debtor who voluntary dismisses her case following the filing of a request for relief from the automatic stay may not file another bankruptcy case until 180 days have passed. In this bankruptcy appeal, debtor Lillie Hogan appeals from the bankruptcy court's order dismissing her Chapter 13 case pursuant to 11 U.S.C. § 109(g)(2) and denying her motion for fees incurred in connection with the Trustee's unsuccessful motion for sanctions. For the following reasons, the bankruptcy court's order is affirmed.

### Standard of Review

In a core proceeding such as this one, the court reviews the bankruptcy court's findings of fact to determine if they are clearly erroneous and reviews conclusions of law de novo. Bankruptcy Rule 8013 (findings of fact); *In re Ebbler Furniture & Appliances, Inc.*, 804 F.2d 87, 89 (7th Cir. 1986) (conclusions of law). The court will review the bankruptcy court's ruling on



Ms. Hogan's motion for sanctions for an abuse of discretion. *United States v. Johnson*, 327 F.3d 554, 562 (7th Cir. 2003).

### Background

To resolve this appeal (from Case No. 04 B 16385), the court must first recap a prior Chapter 13 bankruptcy case (Case No. 99 B 26182) filed by Ms. Hogan. While that case was pending, a creditor moved to modify the automatic stay. The bankruptcy court entered an agreed order stating that if Ms. Hogan failed to comply with certain conditions, the court would modify the stay. The automatic stay was thus continued and was never modified.

According to Ms. Hogan, in April of 2004, approximately three years after the stay had been continued, she realized that the maximum Chapter 13 plan term would expire on August 23, 2004, under 11 U.S.C. § 1322(d). This was problematic for her because it meant that she was obligated to pay $7,555 (the remaining plan balance) in five months. Ms. Hogan thus filed a motion to voluntarily dismiss her Chapter 13 case. When counsel presented the motion to the bankruptcy court, the judge and trustee both advised counsel that if Ms. Hogan dismissed her case, she would have to wait 180 days to file another case. *See* 11 U.S.C. § 109(g)(2). Counsel requested a continuance so he could discuss this matter with his client. He subsequently proceeded with the motion, and on April 21, 2004, the bankruptcy court allowed Ms. Hogan to dismiss her case.

On April 26, 2004, Ms. Hogan filed another voluntary petition for relief under Chapter 13 (from Case No. 04 B 16385). The Chapter 13 standing trustee filed a motion to dismiss the case because it was filed when the 180-day bar from the dismissal of Case No. 99 B 26182 was in effect. The Trustee also moved to sanction Ms. Hogan's counsel given that the second case was

filed within days of the dismissal of the first case, after the court and trustee specifically brought the 180-day filing bar to counsel's attention. Ms. Hogan then requested an award of attorneys' fees incurred in responding to the trustee's motion for sanctions.

The bankruptcy court held that if a motion to modify the automatic stay was filed at any point before a debtor sought to voluntarily dismiss her case, § 109(g)(2) barred that debtor from filing a second case within 180 days of the voluntary dismissal of her first case. It thus granted the trustee's motion to dismiss and lifted the automatic stay in place due to the filing of the second Chapter 13 petition. It also declined to sanction either party. Ms. Hogan appealed and challenges the § 109(g)(2) ruling and the denial of her motion for fees.

### Dismissal Under § 109(g)(2)

Congress enacted § 109(g)(2)[1] to prevent a debtor who obtains dismissal of her case when faced with a motion for relief from the automatic stay from immediately refiling and thereby frustrating creditors' attempts to have their rights adjudicated within a reasonable period of time. *See* 2 Collier on Bankruptcy § 109.08 (15th ed. rev. 2004). Section 109(g)(2), which defines who may be a debtor, provides that, "no individual . . . may be a debtor under this title who has been a debtor in a case pending under this title at any time in the preceding 180 days if . . . the debtor requested and obtained the voluntary dismissal of the case following the filing of a request for relief from the automatic stay provided by section 362 of this title."

---

[1] More precisely, in 1984, Congress enacted § 109(f) as part of the Bankruptcy Amendments and Federal Judgeship Act of 1984. Pub.L. No. 98-353, 98 Stat. 352 (1984). In 1986, § 109(f) was renumbered to § 109(g) without substantive change. Pub.L. No. 99-554, 100 Stat. 3105 (1986).

The parties, supported by authority from numerous divergent courts, disagree as to the meaning of the word "following." According to the trustee, "following" means "occurring after" so a debtor who files a motion to dismiss at any point after the filing of a motion to modify the automatic stay is within the ambit of § 109(g)(2). Ms. Hogan, on the other hand, contends that "following" means "causally related." She thus argues that § 109(g)(2) does not apply to her because her motion to dismiss was not connected to the earlier motion to modify the automatic stay and was not meant to frustrate her creditors. There are five lines of cases interpreting § 109(g)(2). As the Seventh Circuit has yet to weigh in on this issue, the court will enter the fray.

The first line of cases holds that § 109(g)(2) is mandatory and thus bars a debtor from filing a second case if she had another bankruptcy case pending within the preceding 180 days and voluntarily dismissed her case at any point after the filing of a motion for relief from the automatic stay.[2] The courts adopting this position focus on the fact that § 109(g)(2)'s plain language does not require the court to find a causal connection between the voluntary dismissal and the subsequent refiling. *See, e.g., In re Richardson*, 217 B.R. 479, 493 (Bankr. M.D. La. 1998).

---

[2] The divergent authority interpreting § 109(g)(2) means that the court necessarily must include numerous string cites. To enhance readability, the court will collect these citations in footnotes despite its general dislike of voluminous footnotes. Thus, see *In re Bigalk*, 813 F.2d 189, 190 (8th Cir. 1987); *In re Ulmer*, 19 F.3d 234 (5th Cir. 1994); *In re Andersson*, 209 B.R. 76 (6th Cir. BAP 1997); *Kimbrough v. Bass*, No. 95-2674 M1/V, 1996 WL 908942 at *2 (W.D. Tenn. Oct. 23, 1996); *In re Dickerson*, 209 B.R. 703 (W.D. Tenn.1997); *In re Jarboe*, 177 B.R. 242 (Bankr. D. Md. 1995); *Kuo v. Walton*, 167 B.R. 677 (M.D.Fla.1994); *In re Rankin*, 288 B.R. 201 (Bankr. E.D. Tenn.2003); *In re Rives*, 260 B.R. 470 (Bankr. E.D. Mo.2001); *In re Rist*, 153 B.R. 79 (Bankr. M.D. Fla.1993); *In re Tooke*, 133 B.R. 661, 663 (Bankr. M.D. Fla.1991); *In re Keul*, 76 B.R. 79 (Bankr. E.D. Pa.1987). *Cf. In re Denson*, 56 B.R. 543, 546 (Bankr. N.D. Ala.1986) (a debtor's eligibility under § 109(g) is jurisdictional and thus is mandatory); *In re Keziah*, 46 B.R. 551, 554 (Bankr. W.D.N.C. 1985) (same).

They also reason that:

> [I]t seems completely rational to believe that Congress intended [§ 109(g)(2)] to be applied as written, so that debtors would know the consequences of dismissal after a motion for relief from stay, and would avoid effectuating it voluntarily unless the benefits outweighed the downside . . . . While some may believe that § 109(g)(2) leads to unjust results, the fact remains that it is entirely within the power of Congress to decide who will be a debtor, and under what conditions. It is not within the power of the bankruptcy courts, themselves creatures of Congressional act, to question the wisdom of a Congressional act that determines who may be a debtor in bankruptcy, through the conjuring maneuver or decrying, as absurd, consequences which are (to some) felt to be unfortunate.

*Id.; see also In re Munkwitz*, 235 B.R. 766, 767 (E.D. Pa. 1999) ("As a matter of statutory interpretation, legislated law, whenever practicable and plausible, should be read and applied literally . . . . Though this approach [to § 109(g)(2)] may be over-inclusive — covering abuses that Congress was trying to prevent as well as cases where no abuse is evident — a blanket rule to curb potential abuse of the Bankruptcy Code is sensible").

The second approach is a variation of the strict interpretation approach and thus recognizes that § 109(g)(2) is mandatory. Courts adopting this approach, however, do not mechanically apply § 109(g)(2) across the board. Instead, they consider whether doing so would lead to an absurd or unconstitutional result.[3] The third line of cases holds that § 109(g)(2) is mandatory but only applies to cases where the motion for relief from stay was pending at the time of the voluntary dismissal.[4]

---

[3] *See In re Stuart*, 297 B.R. 665, 668 (Bankr. S.D. Ga.2003) (§ 109(g)(2) is mandatory and only requires judicial interpretation "when a literal application of the statute would lead to an absurd or unconstitutional result"); *see also Tooke v. Sunshine Trust Mortg. Trust No. 86-225 (In re Tooke)*, 149 B.R. 687, 689-90 (M.D. Fla. 1992) (court may exercise discretion when applying § 109(g)(2) to avoid absurd results).

[4] *See, e.g., In re Milton*, 82 B.R. 637, 639 (Bankr. S.D. Ga.1988) (refiling was not subject to 180-day bar because parties had worked out an agreement regarding the motion for relief from

-5-

The fourth line of cases hold that § 109(g)(2) is discretionary and does not apply if mechanical application would lead to an unfair or inequitable result.[5] Finally, the fifth line of cases conclude that § 109(g)(2) is not only discretionary but also includes a causal component which requires the court to consider whether the debtor's voluntary motion to dismiss flows from the motion for relief from the stay. The causal connection courts conclude that Congress created the 180-day rule to prevent abuse of the Bankruptcy Code by successive filings so the court may use its discretion to determine if a second case is abusive and thus subject to the 180-day rule.[6] In other words, these courts rely on legislative history in interpreting §109(g)(2) and only impose a filing bar if the debtor's actions were meant to thwart a creditor's valid exercise of its rights. *See In re Sole*, 233 B.R. at 349.

---

the automatic stay in the preceding case and the motion was thus not pending when the debtor sought dismissal); *In re Jones*, 99 B.R. 412 (Bankr. E.D. Ark.1989) (§ 109(g)(2) "applies only if there is a contested matter pending at the time of the voluntary dismissal"); *In re Patton*, 49 B.R. 587 (Bankr. M.D. Ga.1985) (§ 109(g)(2) does not apply when the creditor seeking modification of the stay in the first case had received the requested relief at the time the debtor sought to dismiss her first case).

[5] *See In re Luna*, 122 B.R. 575, 577 (9th Cir. BAP 1990) ("[l]egislative enactments should never be construed as establishing statutory schemes that are illogical, unjust, or capricious" so courts may exercise discretion when applying § 109(g)(2)); *see also In re Ramos*, 212 B.R. 29, 30 (Bankr. D.P.R. 1997); *In re Duncan*, 182 B.R. 156 (Bankr. W.D. Va.1995); *In re Hamm*, 157 B.R. 137, 140 (Bankr. E.D. Mo.1993); *In re Santana*, 110 B.R. 819, 821-22 (Bankr. W.D. Mich.1990).

[6] *See Tooker v. Sunshine Trust Mortgage Trust (In re Tooker)*, 149 B.R. 687, 692 (M.D. Fla.1992) (following a strict, technical application of § 109(g)(2) would "fly in the face of Congressional intent to dismiss cases which do not fit these circumscribed situations on the basis of a distinct multiple-filing scenario"); *see also In re Sole*, 233 B.R. 347, 349 (Bankr. E.D. Va.1998); *In re Copman*, 161 B.R. 821, 824 (Bankr. E.D. Mo. 1993); *In re Samuel*, 77 B.R. 520 (Bankr. E.D. Penn.1987); *In re Nelkovski*, 46 B.R. 542, 543 (Bankr. N.D. Ill. 1985).

The Supreme Court recently reiterated the well-established rule that "when the statute's language is plain, the sole function of the courts — at least where the disposition required by the text is not absurd — is to enforce it according to its terms." *Lamie v. U.S. Trustee*, 124 S. Ct. 1023, 1029 (2004). In determining whether a statute is plain or ambiguous, the court must consider "the specific language at issue, the context in which the language is used, and the broader context of the statute as a whole." *U.S. v. Miscellaneous Firearms, Explosives, Destructive Devices and Ammunition*, 376 F.3d 709, 713 (7th Cir. 2004), *citing Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997); *see also Chickasaw Nation v. U.S.*, 534 U.S. 84, 94 (2001) (a statute is ambiguous if it is "fairly capable" of two interpretations).

The court thus begins with the specific language in § 109(g)(2), which states that individuals must wait 180 days to file a bankruptcy case if they voluntarily dismissed a prior case "following the filing of a request for relief from the automatic stay." The word "following" has a clear, common sense definition: it means in succession to or after an event. Oxford English Dictionary Online, http://dictionary.oed.com (2d ed. 1989). Here, a request to modify the stay was filed and Ms. Hogan subsequently moved to dismiss her case. Because Ms. Hogan filed her motion after a motion to modify the stay was filed, her motion to dismiss follows the motion to modify the stay.

Moreover, § 109(g)(2) does not temporally limit the word "following." Thus, the fact that the motion to modify the stay and to dismiss were filed 3 years apart is irrelevant. Just as February 15th and Halloween both follow Valentine's Day, a motion to dismiss filed the day after a motion to modify the stay is filed and a motion to dismiss filed three years later both post-date, and thus follow, the filing of the motion to modify the stay.

-7-

Ms. Hogan nevertheless suggests that "following" is ambiguous, because multiple courts have interpreted § 109(g)(2) in different ways. The court disagrees. The essence of the dispute over the word "following" is whether courts should apply it literally or whether they should look to Congress' intent in enacting the filing bar and only apply it when the evil sought to be remedied by Congress – abusive filing – is present. The debate over the use of legislative history is a completely separate issue from the question of whether the statute is ambiguous in the first place.

The court next considers the context in which the word "following" used and the broader context of § 109(g)(2) as a whole. Section 109(g)(2) defines who may be a debtor. The placement of the 180-day rule into the definition of "debtor" is instructive. The inclusion of the 180-day rule in the definition of debtor suggests that Congress intended to create a bright line definition saying who may and may not be a debtor. *See, e.g., In re Keziah*, 46 B.R. at 554. If Congress had wished to make the 180-day rule discretionary, it would have made much more sense for the bar to be included in §§ 707 or 1112, which provide grounds under which a court may dismiss a case, or § 1325, which lists conditions under which a plan may be confirmed. *See id.* In addition, Congress has set forth clear guidelines specifying the maximum length of a Chapter 13 plan. *See* 11 U.S.C. § 1322(d). Allowing a debtor to instantly refile a case with no limitations would essentially nullify the rule regarding the maximum length of a plan.

In short, there is no contextual reading of the statute which supports the conclusion that Congress meant the 180-day rule to be discretionary. The only support for that position is the fact that the statute admittedly covers people who, like Ms. Hogan, are not refiling their bankruptcy cases to thwart creditors. The court, however, lacks the power to rewrite the statute

to tailor it to cover only abusive debtors. *Lamie v. U.S. Trustee*, 124 S.Ct. at 1034 ("It is beyond our province to rescue Congress from its drafting errors, and to provide for what we might think . . . is the preferred result" so only Congress may amend a statute to conform it to its intent).

This conclusion is supported by the Supreme Court's recent rejection of a debtor's attempt to avoid a literal interpretation of an amendment to the Bankruptcy Code that changed the compensation structure for debtors' attorneys working on Chapter 7 bankruptcies. *Id.*, interpreting 11 U.S.C. § 330(a)(1). The debtor's attorney contended that the amendment was penny-wise and pound-foolish and thus invited the Court to interpret the statute in a manner which would "promote the prompt and effectual administration of federal bankruptcy law." *Id.* The Supreme Court, however, held that the statute's meaning was plain and did not lead to absurd results because it did not altogether prohibit compensation for debtors' attorneys working on chapter 7 cases. *Id.* It, therefore, concluded that it was bound by the plain meaning of the statute. *Id.*

Section 109(d)(2), like the bankruptcy compensation statute, may not be perfectly drafted to remedy only the evil perceived by Congress. The court thus agrees with Ms. Hogan that a mechanical application of the 180-day rule may negatively affect some textbook-perfect debtors. Nevertheless, the court cannot sit as a superlegislature for this or any other statute and interpret the statute to achieve what it perceives as an ideal result. Congress, not the court, is in this position, and it has clearly stated that a debtor who files a motion to voluntarily dismiss following the filing of a motion to modify the stay must wait 180 days before refiling. Accordingly, Ms. Hogan is not eligible to refile until 180 days after the dismissal of her first case. This means that the bankruptcy court's dismissal of Ms. Hogan's second case is affirmed.

### Attorneys' Fees

"[I]f warranted, the court may award to the party prevailing on the motion the reasonable expenses and attorney's fees incurred in presenting or opposing the motion." Fed. R. Bankr. P. 9011(c)(1)(A). Here, the Trustee filed a motion to sanction Ms. Hogan based on her filing of a second bankruptcy case after being specifically warned that she could not do so. After the bankruptcy court denied this motion, Ms. Hogan unsuccessfully sought an award of attorneys' fees incurred in connection with her opposition to the Trustee's motion for sanctions. The bankruptcy court denied this motion, stating that Ms. Hogan's position was "a stretch" and that she took a risk in filing the second petition.

As noted above, this court must review the denial of sanctions using the abuse of discretion standard. *United States v. Johnson*, 327 F.3d at 562. The court finds that the Trustee's motion for sanctions was eminently reasonable in light of the Supreme Court and Seventh Circuit's general reluctance to abandon a plain meaning reading of a statute in favor of an interpretation based on legislative history. Accordingly, the bankruptcy court did not abuse its discretion when it denied Ms. Hogan's request for fees for her defense of this motion.

### Conclusion

For the above reasons, the bankruptcy court's judgment is affirmed.

DATE: 11-30-04

Blanche M. Manning
United States District Judge

04cv5960.bankruptcyappeal